## EDGAR HUIDEKOPER v. LOUISA H. PERRY ET AL.

CONSTRUING A WILL CONTAINING A DEVISE FOR BENEVOLENT PURPOSES.

Where a testator has sought to make a specific disposition of property, or a disposition of property by terms, and that disposition has failed, such will is not to be construed so as to hold that such bequest or devise fails to become operative by reason of being in violation of statutory regulations—nevertheless it may come within a clause making a disposition of property not specifically disposed of.

ERROR to the Court of Common Pleas of Lucas county.

SCRIBNER, J.

In briefly stating the facts of this case I shall avail myself largely of the facts as set forth in the brief of counsel for plaintiff in error.

The action in the court below involved the construction of the will of Frederick Huidekoper, late a resident of Pennsylvania. The plaintiff below, defendant in error here, the daughter of the testator, filed her petition to quiet title to certain property located in Toledo, under section 5779, Revised Statutes, alleging possession through her tenants. One of the defendants below, Edgar Huidekoper, plaintiff in error here, executor under the will of the testator, filed his answer.

To his answer plaintiff filed a reply, admitting all the facts alleged in the answer, but claiming that the devise in the will of the Toledo property for benevolent purposes was void for two reasons : *First,* for uncertainty; and *second,* because the testator did not survive one year the making of his will, as required by section 5915, Revised Statutes of Ohio.

To the reply the defendant demurred. The court below overruled the demurrer, and granted the defendant leave to file an amended answer, to which the plaintiff demurred ; and the court sustained the demurrer, and rendered judgment for the plaintiff.

From the amended answer it appears that the testator died on the 16th of May, 1892, having been a resident of Crawford county, state of Pennsylvania, where his will, executed October 29, 1891, was admitted to probate, and letters testamentary issued to his daughter and to the defendant; that the widow of the testator is still living, but that his daughter, Anna Huidekoper, died in September, 1893, leaving the answering defendant sole surviving executor of the will. The answer also sets out the will at length. It further sets out three acts of the legislature of Pennsylvania, the first of which corresponds to section 5915, Revised Statutes of Ohio, except that instead of requiring a testator to survive the making of his will one year, it requires but one calendar month in order to render charitable bequests valid.

Section 5915, Revised Statutes of Ohio, the true effect and construction of which is involved in the consideration of this controversy, is as follows:

"If any testator die, leaving issue of his body, or an adopted child, living, or the legal representatives of either, and the will of such testator give, devise, or bequeath the estate of such testator, or any part thereof, to any benevolent, religious, educational, or charitable purpose, or to this state or to any other state or country, or to any county, city, village, or other corporation or association in this or any other state or country, or to any person in trust for any of such purposes, or municipalities, corporations, or associations, whether such trust appears on the face of the instrument making such gift, devise, or bequest, or not; such will as to such gift, devise, or bequest, shall be invalid unless such will shall have been executed according to law, at least one year prior to the decease of such testator."

It will be observed that according to the facts shown in this case in the record, the testator executed his will on the 29th day of October, 1891. He died on the 16th of May, 1892, which, of course, was within the period of one year from the date of the execution of the will. The provisions of the will, so far as they appear to be material here, are as follows:

"1. After the death of my wife I wish that my property with the exceptions hereinafter mentioned shall be equally divided between my children. * * *

"2. Further, should I not while living dispose of my Toledo property, I wish that my executors shall dispose of it, investing the net proceeds thereof, the same to be placed in the hands of Anna Huidekoper, trustee, and be devoted to benevolent purposes. To her I will give full directions concerning it.

"3. Any property not specifically disposed of in the foregoing will shall, if not already invested, be put into a productive shape, and after the wants of the estate have been abundantly provided for, any surplus income shall be divided into three equal parts and given to my wife and each of my daughters.

"4. I appoint as executors of this my last will and testament, my nephew, Edgar Huidekoper, and my daughter, Anna J. Huidekoper, and hereby authorize them, or the survivor of them, and in case either of them shall be unable to perform the duties of executor, then the remaining party to exercise all powers needed in the execution of this trust, not only the power of settling and conveying property, but also to compromise claims and make adjustments, in the collection of securities when they or the acting party may deem the same advisable and for the benefit of those interested in the proceeds.

"5. I authorize my executors, or the survivor of them, to sell or convey as opportunity offers, my real estate in the city of Toledo, Ohio, or any that I may acquire in any other state."

The provisions of the statutes of Pennsylvania bearing upon the questions here in controversy are given in substance in the brief, but are copied literally into the answer filed in the case by the surviving executor. They are as follows:

"Defendant further says that on the 26th day of April, A. D. 1855, the legislature of the state of Pennsylvania passed a law of which the following is a copy:

" No estate, real or personal, shall hereafter be bequeathed, devised, or conveyed to any body politic, or to any person, in trust for religious or charitable uses, except the same be done by deed or will, attested by two creditable, and at the same time, disinterested witnesses, at least one calendar month before the decease of the testator or alienor; and all dispositions of property contrary hereto, shall be void, and go to the residuary legatee or devisee, next of kin, or heirs, according to law; provided that any disposition of property within said period, *bona fide* made for a valuable consideration, shall not be hereby avoided."

That on the 4th day of June, 1879, the legislature of the state of Pennsylvania passed a law of which the following is a copy :

" Every will shall be construed with reference to the real estate and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will. Unless a contrary intention shall appear by the will, such real estate or interest therein as shall be comprised or intended to be comprised in any devise in such will contained, which shall fail or be void by reason of the death of the devisee in the lifetime of the testator, or by reason of such devise being contrary to law, or otherwise incapable of taking effect, shall be included in the residuary devise if any, contained in such will."

That on the 9th day of May, A. D. 1889, the legislature of Pennsylvania passed a law of which the following is a copy:

" No disposition of property heretofore or hereafter made for any religious or other charitable uses shall fail for want of a trustee or by reason of the objects ceasing or depending upon the discretion of a last trustee, or being given in perpetuity, or in excess of the annual value limited by law; but it shall be the duty of any court having equity jurisdiction in the proper county, to supply a trustee, and by its decrees to carry into effect the intention of the donor or testator, so far as the same can be ascertained and carried into effect consistently with law or equity."

And upon this state of facts as the terms of the will, a copy of which is set out in the answer, it is claimed on the part of the plaintiff in error, the executor of the last will and testament of the decedent, that the defendant should have judgment of the court upon the question as to the true construction of this will in so far as the Toledo property is concerned, and he prays that the claims made by the plaintiff in the proceeding may by the decree of the court be declared invalid and of no effect, " and that plaintiff be perpetually enjoined from making any claim to said real estate; and that all such claims be quieted, and that this defendant be vested with power of sale of and entitled to the possession of said real estate."

One of the principal grounds of contention in this case is this: it is claimed on the part of the plaintiff in error, the executor of the last will and testament, that by the terms of this will the doctrine of equitable conversion is applied, so that by force of that doctrine the property disposed of by the will is not to be regarded as real estate, governed and controlled by the laws of Ohio, but is to be treated and regarded as personalty, which of course follows the domicil of the testator, and is to be treated, regarded and disposed of according to the laws of the state of Pennsylvania, where the testator resided, and where his last will and testament was made and admitted to probate.

The doctrine of equitable conversion and its application in cases of testamentary disposition of property is stated very distinctly in the case of *Collier* v. *Grimesey et al.*, 36 O. S., 17, and the court there enunciates

the great, well-established, well-understood doctrines of courts of equity applicable in such cases. The provision of the will coming under review by the court was in these words:

"I direct that when my son, Samuel Painter, shall arrive at the age of twenty-one years, that the above mentioned real estate shall be sold (provided that my wife's widowhood shall have ceased before that time), and to be devised between them as follows: Seth, Samuel and Oris, two shares each, and the rest of my children one share each."

The court say of this disposition of the property that the direction to sell the land is imperative— and perhaps I ought to state that the form of this language should be carefully regarded and considered in giving a proper construction and effect to the ruling of the court. The court says that this language which I have just read from the will itself is imperative. There is no discretion vested in them whether the land shall be sold or not. The direction is that the real estate shall be sold and the proceeds of the real estate divided among the persons designated. In the syllabus the court declare, in the third paragraph, "That under the direction to sell, the land is to be regarded, for the purposes of distribution, as converted into money; and that the children and grandchildren took, at the death of the testator a vested interest in the proceeds of the sale."

The all-important question in this case is whether or not the doctrines of the court of equity as declared in the case to which I have just referred shall apply to a case like the present, where, by the provisions of the will the executor is authorized to sell and to pay the proceeds of the sale to a trustee who may dispose of it for benevolent purposes according to directions which are to be furnished to her by the testator. Now it would be well to recur for a moment to the two provisions of the will upon which this question depends:

"Further, should I not while living dispose of my Toledo property, I wish that my executors shall dispose of it, investing the net proceeds thereof, the same to be placed in the hands of Anna J. Huidekoper, trustee, and be devoted to benevolent purposes. To her I will give full directions concerning it."

And this paragraph should be read in connection with the former:

"I authorize my executors, or the survivor of them to sell or convey as opportunity offers my real estate in the city of Toledo, Ohio, or any I may acquire in any other state."

First, he declares that should he not while living dispose of his Toledo property, that his executors shall dispose of it, "investing the net proceeds thereof, the same to be placed in the hands of Anna J. Huidekoper, trustee, and to be devoted to benevolent purposes. To her I will give full directions concerning it." Then he further says, as I have read, "I authorize my executors, or the survivor of them, to sell or convey as opportunity offers, my real estate in the city of Toledo, Ohio, or any I may acquire in any other state." Now we fail to see that by these provisions of the will there is an imperative provision made for the sale of this property. The testator in the first place expressed a wish, in the event that he has not disposed of the property during his lifetime, that his executors shall dispose of it then and invest the proceeds, and place them in the hands of the trustee named to be devoted to benevolent purposes. That is supplemented with a direction or a provision declaring that he confers authority upon the executors to sell or convey as

opportunity offers his real estate in the city of Toledo, Ohio, or any that he may acquire in any other state.

It is a matter of quite serious doubt in our minds as to whether or not, under these provisions of the will the doctrine of equitable conversion applies to this case. But assuming that the language is sufficiently clear and express to give that effect to it, let us look for a moment to the case of *Patton* v. *Patton*, 39 O. S., 590, which seems to have a very important bearing upon this case. In that case the will, the true construction of which was being sought for by the parties and considered by the court is set forth in *extenso*, or appears to be; and by that will there were in the first place the provisions that the funeral expenses of the testator shall be duly paid, and then follows·

"2d. All the remainder of my personal estate, including moneys, rights in action, household goods and goods of every kind, and chattels, I give and bequeath to my wife, Betsey Ann Patton, during her natural life, and at her death, to my grandson, Joseph Frank Patton.

"3d. I give and devise to my wife, Betsey Ann Patton, all my real estate during her natural life, and at her death I give and devise the same to my grandson, Joseph Frank Patton.

"4th. After the death of my wife, and during the minority of my said grandson, I give to my executor, hereinafter named, or to his successors in office, the possession and control of my said real estate, and direct that he may apply the income from said real estate to the proper support, maintenance and education of my said grandson, or so much thereof as may be necessary for such purpose, and that the residue (if any), be safely invested for his benefit by said executor, or the lawful guardian of said grandson."

And here comes the important part of it:

'5th. If my said grandson, Joseph Frank Patton, die leaving no child or children, then I direct my said executor, or his successor, to sell all my real estate in such manner and upon such terms as he shall deem best, and to execute proper conveyance therefor, and the proceeds of such sale, also moneys and other properties devised by me to my said grandson, after payment of costs and expense of administration, I direct to be paid share and share alike, to the Board of Home Missions of the Presbyterian Church in the United States of America, whose office is now in New York City, and to the Board of Foreign Missions of the Presbyterian Church in the United States of America, whose office is now in New York City, to aid in carrying on the work of foreign and domestic missions. But if my said grandson die leaving a child or children, then I give and bequeath to said child or children all moneys and property hereinbefore mentioned, and devised, such child or children to take said real estate in fee simple."

And he then appoints an executor with authority to make public or private sale of his personal property for the payment of debts.

"This is a civil action," the statement of the case says: "brought by James H. Patton, a brother of the testator, Joseph D. Patton, for the partition of the real estate of which the testator died seized, among his brothers and sisters and their legal representatives, all of whom are parties, and who are alleged to be the owners thereof in fee simple. All persons claiming an interest in the real estate are also made defendants. The Boards of Home and Foreign Missions deny the title of the brothers and sisters of the testator, and claim the entire beneficial interest in the lands under the fifth item of the will. Augusta A. Curtis and Jennie

Hill claim the estate as the heirs and next of kin of Joseph Frank Patton. The executor of Joseph D. Patton, the testator, claims the right to sell the estate under the fifth item of the will, and to pay the proceeds to whomsoever entitled."

It was claimed in the argument by counsel for Joseph Frank Patton, that the estate, both real and personal, "is now property undisposed of by the will of Joseph D. Patton; that it became intestate property at the time of the death of Joseph Frank Patton, without children, and not before; that the death of Frank Patton without child or children is a contingency unprovided for in the will. It is true that it was provided for, but the provision being void (the fifth clause of the will), it is the same in law of being unprovided for, and then, at that time, this property becomes intestate property, and descends to the heirs at law of the testator, for it cannot be claimed that this property was intestate property at any time during the life of Joseph Frank Patton."

Counsel for Joseph D. Patton's executor claimed this:

"The language of the will is imperative: 'I direct my said executor or his successor, to sell all my real estate, etc.' The only discretion given is as to the manner and terms of sale. The clear purpose is to convert the real estate into money, and to blend it with the other personal estate for further administration, and after the payment of costs and expenses of such administration to distribute it as directed."

This is, as I understand it, the argument that is made on behalf of this executor. Counsel proceed to say:

"An absolute direction to sell, effects a conversion, though the intended beneficiary (a charity) be incompetent to take; the will having been executed within one month of testator's death."

Counsel for certain of the brothers and sisters and the administrator of Joseph F. Patton, claimed, among other things, "as to the real estate of the testator we contend that it was stamped with the character of personalty by the absolute direction to the executor to sell and convert, and transmute into money, and that the right to the proceeds of its sale passed as personal property to the administrator of Joseph Frank Patton to be distributed to his next of kin. Nothing is better settled in this state than that land directed to be sold and converted into money is treated as personal estate, and governed by the statute of distribution."

I have read so much from the points presented by counsel to show how nearly the question presented here corresponds to the questions that were disposed of by the court in the case of *Patton* against *Patton;* it being there insisted by different counsel representing the different interests in the case that the direction to the executor operated to convert it into personalty, and to bring it, therefore, within the rules governing the disposition of personalty.

McIlvaine, J., says:

"As to the claim of the Home and Foreign Missions: It was, beyond doubt, the intention of the testator, that in case of the death of his widow and the death of his grandson, leaving no child or children, the real estate in dispute should be sold by the executor, and the proceeds equally divided between the missions. But, the testator dying within a year from the execution of the will, the contingent bequest to the missions fell within the condemnatory terms of the proviso in section 1 of the wills act of March 30, 1874, and in the act of 1883."

"In behalf of the missionary boards it is contended that this proviso does not apply to a bequest contingent upon the extinction of lineal de-

scendants. This contention is based on the assumption that lineal heirs alone may object to such bequest, as the proviso was for their protection alone. But this assumption is not authorized by the statute. We can see no reason why anyone interested in the descent and distribution of the estate may not assert the invalidity of the bequest. True, the invalidity of the bequest depends on the existence of lineal descendants, natural or adopted, at the death of the testator; but no use of the void bequest is preserved to lineal descendants. It remains in the general estate, and if not otherwise disposed of in the will, becomes intestate property. The true character of such bequest, whether void or valid, is determined by the state of facts existing at the testator's death, and not by any subsequent contingency."

After considering another proposition presented in the case, the court come directly to the main and important question to be determined:

"What, then, became of the title to the property in controversy, upon the death of the testator?

"Under the will, an estate for the life of the widow vested in her, and an estate in remainder, after the death of the widow, vested in the grandson, Joseph Frank, for his life. Remainder over, in fee, to the child or children of Joseph Frank, if he should die leaving a child or children. There was no such child or children in being. And no further disposition was made of the property by the will. True, the terms of the devise to Joseph Frank were ample to pass, subject to the life estate of the widow, a fee simple remainder, but construed in connection with other parts of the will, it is quite clear that the testator intended the estate devised to the grandson to be for his life only.

"It seems clear, therefore, that upon the death of the testator the whole estate, subject to the life estates of the widow and the grandson, vested by descent in the heir of the testator, subject to be divested in favor of the child or children of Joseph Frank Patton, if he should die leaving any.

"Joseph Frank Patton, therefore, sole heir of the testator, never having had a child or children, died seized of this estate in fee simple, and intestate.

"The next question in the case is raised by the executor of Joseph D. Patton's will, who claims the right under the will to sell the estate and administer upon the proceeds. Augusta A. Curtis and Jennie Hill, sisters of the mother of Josesh Frank Patton, as next of kin to the deceased Joseph Frank, claim that by the direction to sell contained in the will, the estate is to be regarded as converted into money, and passes to the next of kin as personalty. These claims may be disposed of together. The controlling question is: Did the testator intend that upon the death of Joseph Frank, without leaving a child or children, this property should be converted into money, although the bequests to the mission boards should be invalid and void? It is not at all probable that the testator contemplated such contingency ; but, on the other hand, we are satisfied that the sole reason of the testator in directing the sale of the land was for the purpose of dividing the proceeds, as money, between the two boards of mission. If this be so, the power of sale fell with the bequests. The direction in the will is, that 'If my said grandson, Joseph Frank Patton, die leaving no child or children, then I direct my said executor, or his successor, to sell all my real estate * * * and the proceeds of such sale * * * I direct to be paid share and share alike to the Board of Home Missions * * * and to the Board of Foreign

Missions.' True, the contingency happened upon which the testator intended the power to sell should accrue, and upon the happening of the same contingency, the direction to pay the proceeds share and share alike to mission boards was to become absolute, according to the intention of the testator. But, by his death within a year from the making of the will, the directing as to the payment of the proceeds become inoperative and void, therefore the direction to sell also become inoperative and void."

The learned judge then proceeds to cite from a paragragh of Williams on Executors, language which very strongly and clearly expresses the view that he had laid down.

Our conclusion, therefore, is, that upon this, one of the main propositions, the will itself did not by its terms, contain such an imperative direction to convert this real estate into money, or to dispose of it for the purposes contemplated, as make the equitable conversion claimed on the part of counsel for the plaintiff in error. If it did that, under the ruling made by the supreme court in the case of *Patton* v. *Patton, supra,* which I have read, then the power to sell for a particular purpose, which purpose was declared to be inoperative and illegal by our statutes, would not make any special difference in the rules of law to be applied. This would not withdraw the devise from the operation of the statute which inhibits the making of a will, or which prevents the giving effect to terms such as are here in question, unless the testator shall live for a period of twelve calendar months beyond the date of the will.

There is another question made here which I will briefly notice :

"Any property not specifically disposed of in the foregoing will shall, if not already invested, be put into a productive shape and after the wants of the estate have been abundantly provided for, any surplus income shall be divided into three equal parts and given to my wife and each of my daughters."

There was no provision of this character contained in the will in the case of *Patton* v. *Patton, supra,* and it is insisted here that if the devise fails by reason of the statutory inhibition, and is inoperative on that account, then it may be regarded as coming within the operation of the clause disposing of property not otherwise specifically disposed of. That is to say, if this clause is to be held inoperative and invalid, because contrary to the statute, that it is not specifically disposed of, and therefore it may pass under the clause which provides as to what shall be done with property not specifically disposed of. But we are unable to see our way clear to adopt the view ingeniously stated by able counsel, supported partly by authority I must confess, by which it is sought to give effect or to pass the property by virtue of this clause as to property not specifically disposed of. It seems to us that it would hardly be a proper construction of the will or of the statute to hold that where a testator has sought to make a specific disposition of property, or a disposition of property by terms, and that disposition has failed, that bequest or devise fails to become operative by reason of being in violation of statutory regulations—nevertheless may come within a clause making a disposition of property not specifically disposed of. We can hardly understand or suppose that if the testator had understood that operation and effect was not to be given to the clause which presents the principal question here, he was in that event disposing of the property by the clause here in question.

There are other questions made in the record of the case; but in view of what has been suggested as to the proposition that we have passed upon, we do not think it necessary to express an opinion upon them. For example, we hardly think that it is necessary for us to say as to whether or not this devise is void for uncertainty. It is sufficient, it appears to us, that it comes within the language of the statute which forbids the disposing of property in this state for charitable or benevolent purposes unless the testator shall have survived the execution of his will at least the period of one year.

We desire to acknowledge our obligations to counsel for the very important assistance rendered us in the collection, arrangement and presentation of the authorities and of the books bearing upon this important proposition.

*Swayne, Swayne & Hayes*, Attorneys for Plaintiff in Error.

*H. Goodwin*, Attorney for Defendant in Error.